UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5: 23-CR-035-S-GFVT

UNITED STATES OF AMERICA                                    PLAINTIFF

V.                        PLEA AGREEMENT

JUSTIN LATIEF FLOYD                                         DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter guilty pleas to Count 1 of the Superseding Indictment charging a violation of 21 U.S.C. § 846, Conspiracy to Distribute 5 kilograms or more of cocaine, a Schedule II controlled substance and to Count 3 of the Superseding Indictment charging a violation of 21 U.S.C. § 841(a)(1), Possession with Intent to Distribute 40 grams or more of fentanyl, a Schedule II controlled substance. The Defendant will also forfeit his claim to the assets listed in the Forfeiture Allegation. The United States will move to dismiss the underlying indictment at the sentencing hearing.

2. The essential elements of Count 1 are:

    (a) that the Defendant, and others, did engage in a conspiracy or agreement to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, and

    (b) that the Defendant knew the purpose of the agreement and voluntarily joined the conspiracy.

The essential elements of Count 3 are:

(a) First, that the Defendant did possess with intent to distribute 40 grams or more of fentanyl, a Schedule II controlled substance to another person, and

(b) Second, that the Defendant did so knowingly and intentionally.

3. As to Counts 1, 3, and relevant conduct, the United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

(a) On 02/14/2023, a Detective with the Lexington Police Department (LPD) was contacted by a qualified confidential informant (QCI) who advised that a subject, wanted to send a courier to deliver a quantity of cocaine to QCI in Lexington, Fayette County, Kentucky in the Eastern District of Kentucky. The QCI advised that this delivery was to occur on or about 02/17/2023. The meet location would be at a McDonalds located in Lexington on or about noon on Friday 02/17/2023.

(b) LPD Detectives set up surveillance in the area and instructed QCI to only view the cocaine. At approximately 1150 hours a male Hispanic, who was later identified as Juan Carlos Zamora-Marchan,(Zamora) arrived in a Chevy Equinox and parked next to LPD detectives. Zamora then pulled up his hoodie and placed a covid mask over his mouth. Zamora remained in the vehicle and appeared to be looking around and appeared nervous.

(c) QCI had already parked at the McDonalds. After several minutes Zamora pulled from the parking spot and contacted QCI. Zamora showed QCI a large quantity of suspected cocaine. QCI was advised by Zamora that kilograms of cocaine were $27,000 each. QCI and Zamora left the area and Zamora was followed away by LPD detectives. QCI advised that Zamora had the cocaine wrapped up in a white plastic bag.

(d) LPD detectives followed Zamora to the Crystal Springs Apartment complex located on Alexandria Drive also in Lexington. A LPD Detective pulled into the parking lot and observed Zamora exit the Chevy Equinox carrying the white plastic bag. Zamora took the bag into an apartment in Building #6. Surveillance was terminated at this time.

(e) On 03/02/2023 your affiant and assisting investigators maintained surveillance on Zamora as he worked at an apartment complex on Hollow Creek. At approximately 1700 hours Zamora left the apartment complex with the same plastic bag that he carried out of his residence that morning. Investigators followed Zamora to an address on Whitney Avenue where he backed into the driveway. After a few minutes a LPD Detective observed Zamora exit the residence and get into his Equinox. Investigators followed

2 .

Zamora to a meeting location at the McDonalds on Georgetown Road. Zamora pulled into the gas station connected to the McDonalds lot and parked at a gas pump. Zamora exited his vehicle and began walking around the lot while talking on his cell phone. LPD Detectives determined that Zamora was in possession of two kilograms of cocaine. LPD Detectives approached Zamora who had 2 kilograms of suspected cocaine in a shoe box in the back seat of his vehicle.

(f) Investigators immediately went back to the area of the Whitney Avenue address as this appeared to be the address where Zamora obtained the seized cocaine. There was a grey Dodge pickup truck in the driveway which was present when Zamora was at the residence. Subsequently, the Defendant exited the residence and got into the truck and left the area. The Defendant was followed away and stopped for a traffic violation. A qualified and trained Narcotics K9 alerted to the odor of narcotics coming from the Dodge truck and it was subsequently searched by investigators. The Defendant had several thousand dollars in his pockets and several more thousand dollars in the center console of the truck.

(g) Detectives determined that the 2 kilograms of cocaine Zamora had in his possession came from the Whitney Avenue, address. This is based upon Zamora leaving his residence on the morning of 03/02/2023 with a small bag which appeared to be a packed lunch. Zamora went to work at his maintenance job at an apartment complex and left in the afternoon with what appeared to be the same small plastic bag. Zamora drove directly to the Whitney Avenue address and was only inside for a couple minutes before leaving the residence and driving directly to the meet spot where he was arrested with the 2 kilograms of cocaine.

(h) On 03/02/2023 a search warrant was executed at the Defendant's residence on Whitney Avenue. Detectives located a tool bag hidden inside the Defendant's box springs under his mattress. There was a large hole cut in the box spring cover where this tool bag was concealed. Inside this bag was a large baggie which contained approximately 140 grams of suspected cocaine and several other plastic baggies which contained approximately 12 ounces of suspected fentanyl. Next to the bed was the bedroom closet where detectives located a box which contained a kilo press, blender, latex gloves, cutting agents, and a notebook ledger. The Defendant also had a large bag of rubber bands which are typically used to bundle bulk currency. The Defendant had $3,960 cash in his jacket pocket, $4,905 cash in his center console of his vehicle, $7,751 cash in a book bag in the truck, and another $2,245 cash in his left pants pocket. It was clear that the bedroom in the Whitney Ave. address belonged to the Defendant as it had men's clothing and his mother told investigators that that bedroom belonged to her son, the Defendant. The Defendant also located mail matter inside the Whitney Avenue addressed to the Defendant.

(i) Detectives were completing the citation for the Defendant and were explaining to him what he was being charged with. The Defendant verbally cut off the Detective and told him that he knew what was inside his house. After the search warrant was executed

3

>LPD investigators determined that within the last few months, the Defendant (by agreement) had been sent over 5 kilograms of cocaine by others outside the EDKY, which were then, by agreement, obtained and distributed by Zamora to persons unknown to the Defendant. The Defendant admits that the United States can prove that the amount of cocaine foreseeable to him as his part of this conspiracy is not less than 5 but not more than 15 kilograms. Additionally, the Defendant admits that the United States could prove that he provided the two (2) kilograms of cocaine mentioned above to Zamora just prior to Zamora's arrest.
>
>(r) The suspected cocaine and suspected fentanyl were sent off to the Kentucky State Police Lab (KSP) for analysis. The KSP Lab determined that the suspected fentanyl exhibits weighed approximately 106.6 grams and 93.8 grams respectively for a total amount of 200.4 grams. This amount is consistent with distribution as opposed to personal use. The seized cocaine exhibits weighed 985.2 grams and 989.5 grams respectively. This amount is consistent with distribution as opposed to personal.

4. The maximum statutory punishment for Count 1 is imprisonment for not less than 10 years and not more than Life imprisonment, not more than a $10,000,000 fine, and at least 5 years supervised release. The statutory maximum punishment for Count 3 is imprisonment for not less than 5 years and not more than 40 years, a fine of not more than $5,000,000, and at least 4 years supervised release.

A mandatory special assessment of $100 per count applies, and the Defendant will pay this $200 assessment to the U.S. District Court Clerk at the time of the sentencing hearing.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

>(a) United States Sentencing Guidelines (U.S.S.G.), November 2023 Manual, will determine the Defendant's guidelines range.

new United States Sentencing Guidelines (U.S.S.G.), in effect at the time of sentencing will determine the Defendant's guideline range, the guidelines from the November 2023 Manual, are utilized here.

(b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the conduct listed in paragraph 3 above as well as previously provided discovery. The parties agree that the amount of cocaine foreseeable to the Defendant is not less than 5 kilograms but not more than 15 kilograms. The base offense level for the cocaine is a level 30. The amount of fentanyl foreseeable to this Defendant is 200.4 grams. The base offense level for the fentanyl is a level 26.

(c) The converted drug weight for the two substances mentioned immediately above is 1,501.1 kilograms which is a base offense level of 30.

(d) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant waives the right to appeal the guilty plea and conviction. The Defendant reserves the right to appeal the final sentence. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

8. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

5

9. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

10. The Defendant understands and agrees that pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court

imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

11. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

12. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

13. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

14. The Defendant and the Defendants attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is

voluntary.

|  |  |
|---|---|
|  | CARLTON S. SHIER, IV<br>U.S. ATTORNEY |
| Date: 12/4/23 | By: *signature* W. West AUSA<br>Roger W. West<br>Assistant United States Attorney |
| Date: 12-4-23 | *signature*<br>Justin Latief Floyd<br>Defendant |
| Date: 12-4-23 | *signature*<br>Hon. Scott Cox<br>Attorney for Defendant |

8